UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


DAVID SCHLESSINGER,                    )
                                       )
                Plaintiff,             )
                                       )
        v.                             )
                                       )
THE CHICAGO HOUSING AUTHORITY,         )
CVR ASSOCIATES, INC., CHARLES          )
WOODYARD (individually and in his      )
official capacity), ANA VARGAS         )
(individually and in her official capacity), )   Judge Joan B. Gottschall
KEN LOVE (individually and in his official )
capacity), MICHAEL PEREZ (individually  )        Case No. 12 C 3733
and in his official capacity), JANICE   )
STEWART (individually and in her official )
capacity), JESSICA PORTER (individually )
and in her official capacity), SAM IYELO )
a/k/a SALVATORE AIELLO (individually   )
and in his official capacity), KEITH    )
COLEMAN (individually and in his official )
capacity), and JOHN DOE (individually and )
in his official capacity),              )
                                       )
                Defendants.            )


                         **MEMORANDUM OPINION & ORDER**

    Plaintiff David Schlessinger brought a six-count complaint against Defendants The

Chicago Housing Authority ("the CHA"), CVR Associates, Inc. ("CVR"), and individual

employees and officers of the CHA and CVR Charles Woodyard, Ana Vargas, Ken Love,

Michael Perez, Janice Stewart, Jessica Porter, Salvatore Aiello, and Keith Coleman (collectively,

"Defendants"). Schlessinger alleges violations of his civil rights and various state laws. Now

before the court is Defendants' motion to dismiss the action pursuant to Federal Rules of Civil

Procedure 12(b)(6) and 12(f)(2). For the reasons that follow, the court dismisses the civil rights

claims in counts I & II of the complaint. Because Schlessinger's federal claims are not actionable, the court declines to exercise supplemental jurisdiction over his state-law claims.

## I. BACKGROUND

The court takes Schlessinger's allegations as true for purposes of the motion to dismiss. Schlessinger's complaint contains thirty pages of confusing factual allegations, which the court will summarize as best it can. According to the complaint, Schlessinger is a landlord who has participated since 2005 in the Housing Choice Voucher ("HCV") program, the federal government's Section 8 program providing assistance to renters in the private market. Under the HCV program, once a program participant has located an approved rental unit, a local public housing agency, such as the CHA, will pay the landlord a rent subsidy. The agency must inspect the rental unit in accordance with the agency's guidelines, federal regulations, and local law. CVR is a company contracted by the CHA to inspect units as part of the HCV program.

Schlessinger has owned and operated approximately sixteen rental units leased to HCV program participants since 2005. He entered into a housing assistance payment ("HAP") contract with the CHA for each of the units. Pursuant to the contracts, the CHA paid a portion of monthly rent on behalf of the tenants. Schlessinger has been subjected to about twenty inspections per year by the CHA.

In 2008, Schlessinger began to voice opposition to the CHA's system of inspecting HCV units, challenging the inspectors' accuracy and competency. Between January and May 2009, he complained to officers and agents of the CHA about the inspections, complained at a CHA Public Board of Directors meeting, contacted the Director of the U.S. Department of Housing and Urban Development ("HUD") with complaints, and sent a letter to officers and agents of the CHA complaining that the CHA was violating its contract with HUD. In July 2009, he received

a letter from the CHA's Senior Vice President apologizing for the inconsistency of the inspections. He was also provided with the personal cell phone number of the CEO of McCright and Associates, the company doing the inspections at the time. This resulted in a temporary remedy for Schlessinger's complaints.

CVR took over operations for the HCV program on or about January 1, 2011. After the resumption of inspections Schlessinger viewed as incompetent, Schlessinger again complained to CHA officers and agents. Between March and June 2011, he voiced his complaints at the CHA's Public Board of Directors meeting. In April 2011, a tenant abandoned one of Schlessinger's properties without required notice. The CHA allowed the tenant to relocate to another property, despite the fact that the tenant owed rent to Schlessinger and was still under a current lease.

During inspections of Schlessinger's properties conducted between January and August 2011, the CHA failed Schlessinger for deficiencies that Schlessinger claims did not exist, were not grounds for failure under the appropriate guidelines, and/or were not Schlessinger's responsibility. Schlessinger incurred expenses for repairs. Many of the inspections were reevaluated by the CHA, but the CHA did not always update its system to reflect corrections. Schlessinger had to request letters from the CHA stating that his properties had passed inspection, and he did not always receive the letters. Schlessinger spoke to Ken Love, the CHA's Deputy Director of Inspections, by phone. Mr. Love apologized to him for problems with the CHA's online system.

On or about July 27, 2011, Schlessinger contacted the Director of HUD to file further complaints against the CHA. On or about August 15, 2011, he faxed a letter of complaint to Jessica Porter, the Senior Vice President of the CHA. He sent copies to the HUD Director and to Ken Love, the CHA's Deputy Director of Public Housing Janice Stewart, and Jerome Davidson.

He also spoke to Ms. Porter by phone. He complained about several problems with the inspection process, specifically that one of his tenants had received a Notice of Intent to Terminate ("NIT") her housing voucher due to repairs not completed, when he had received a letter stating that the property had passed inspection. In August 2011, Ms. Porter initiated a conference call with Schlessinger, CVR CEO Ana Vargas, Mr. Love, and CHA Inspections Manager Keith Coleman. Ms. Porter asked Schlessinger to provide written documentation that failed items had been corrected and to allow the CHA to reinspect the failed items. Schlessinger objected to a reinspection because the property had already passed inspection but relented based on Ms. Porter's assurances that only the items in dispute would be inspected. Instead, a complete inspection of the property was conducted on August 17, 2011, and many violations were cited. Schlessinger was not provided a copy of the inspection report until August 29, 2011. He exchanged emails with Mr. Love and requested an extension of time to make repairs. On August 31, 2011, Schlessinger received a letter stating that the inspector had noted criminal activity and unauthorized tenants in the premises, and that the CHA planned to take action against the tenant.

On September 1, 2011, Schlessinger received a HAP payment for March 2011 with $7,800.00 deducted from the amount due. No reason was given for the deduction. After contacting Mr. Love, Schlessinger was informed that the HAP contract for one of his units was being terminated. Schlessinger continues to incur losses each month for the unit; a tenant resides in his unit but Schlessinger is not receiving subsidy payments from the CHA.

On September 29, 2011, Schlessinger filed a complaint against the CHA and CVR in the Circuit Court of Cook County for Breach of Contract and Tortious Interference with Contract. Seven days later, on October 6, 2012, the CHA sent five of his tenants NITs.

In October and November 2011, Schlessinger had several conversations and exchanged emails with officers and agents of the CHA regarding one of his tenants, Yolanda Booth. Ms. Booth's lease did not expire until October 31, 2012, but on or about November 2, 2011, Schlessinger received a letter from the CHA stating that Ms. Booth intended to vacate the property on October 31, 2011. Ms. Booth actually abandoned the property on November 9, 2011, without giving Schlessinger thirty days notice. The CHA sent Schlessinger a letter stating that $1,490.00 in housing payments for Ms. Booth were overpaid to him for November 2011 and would be deducted from his next HAP payment. Ms. Booth caused damage to the property and removed Schlessinger's items from the property. Schlessinger sent emails to Ms. Stewart stating that the CHA was harassing and retaliating against him by violating HUD and CHA regulations. He told Ms. Stewart that Ms. Booth had stolen his refrigerator and stove and had caused damage to the property. Ms. Stewart responded by admitting that the CHA had not provided Schlessinger with timely notice of Ms. Booth's intent to vacate the property.

Another of Schlessinger's tenants, Michelle Sanders, filed a notice of intent to vacate her unit with the CHA on December 31, 2011, even though her lease did not expire until August 31, 2012. The CHA informed Schlessinger that it was terminating his HAP contract for the unit. Ms. Sanders did not provide Schlessinger with thirty days notice of her intent to vacate the property. Schlessinger filed a motion for a temporary restraining order on December 29, 2011. The motion was denied, but the CHA canceled the moving papers for Ms. Sanders.

On January 17, 2012, an inspection was conducted on one of Schlessinger's properties, and certain items failed the inspection. On January 31, 2012, the CHA terminated one of Schlessinger's tenants from the HCV program without a hearing, causing financial loss to Schlessinger. On February 29, 2012, another tenant was terminated without a hearing, causing

5

further financial loss to Schlessinger. A third tenant was terminated from the HCV program as of May 31, 2012.

In January 2012, the CHA conducted an informal hearing for another tenant, Ms. Christine Pearson, who had received an NIT on October 6, 2011. Ms. Pearson's housing voucher was restored. The CHA sent Schlessinger a letter stating that it was going to inspect one of his properties on February 15, 2012, although Schlessinger had not received rent for the property since March 1, 2011. The CHA did not pay Schlessinger the rent due, and he did not allow the inspection. On or about March 16, 2012, the CHA sent Schlessinger a notice that it was going to terminate Ms. Pearson from the HCV program for prohibiting the inspection. Schlessinger faxed Ms. Stewart a letter stating that he felt he and his tenants were being harassed. An inspection was scheduled but not conducted in April 2012.

Two of Schlessinger's other properties were inspected on April 12, 2012, and numerous items were failed, including some emergency fail items that had to be corrected within twenty-four hours. Schlessinger had someone at the property to ensure access to the unit. The inspector contacted Schlessinger by phone about the emergency fail items. Schlessinger asked that the report be faxed or emailed to him, but the inspector told him he could not provide him with a copy of the report, and Schlessinger hung up on the inspector. Schlessinger alleges that the failure to provide a written report was in violation of CHA and HUD regulations. Schlessinger was unable to locate a list of the emergency fail items and failed a reinspection the next day. Schlessinger received notice of the failed items on April 20, 2012, and passed an inspection on April 27, 2012. The CHA abated the rent subsidy for the unit.

Schlessinger filed a six-count complaint in this court on May 15, 2012. In count I, he brings a claim pursuant to 42 U.S.C. §§ 1983 and 1985 seeking injunctive and declaratory relief

for violations of his First, Fifth, and Fourteenth Amendment rights. He alleges that his First Amendment rights were violated when Defendants retaliated against him for opposing Defendants' improper conduct. He further alleges that Defendants violated his due process rights by failing to provide proper notice, citing him for unnecessary repairs, abating his subsidy payments, and terminating him from the HCV program. He also alleges that Defendants failed to comply with HUD regulations.

In count II of the complaint, Schlessinger seeks damages, alleging that the CHA and CVR are liable for the wrongful conduct of the individual Defendants as they failed to properly train their employees about the rights of landlords and condoned a policy, practice, and custom of improperly contracting with private companies to perform inspections, using unqualified or uncertified personnel, citing landlords for unnecessary repairs as a pretext to terminate them from the program, converting funds through subsidy abatements without proper notice, and wrongfully expending federal funds. According to the complaint, the CHA and CVR also failed to properly discipline and supervise their officials and exhibited intentional or deliberate indifference to the constitutional rights of landlords. Counts III-VI are supplemental state law claims. Count III alleges conversion, count IV breach of contract, count V tortious interference with contract, and count VI intentional infliction of emotional distress.

Schlessinger seeks an order compelling the CHA to restore his HAP contracts for the subject properties, a declaratory judgment that the CHA's contracted inspectors from CVR are unqualified and/or unlicensed to perform inspections under state law, as well as an injunction barring unqualified and/or unlicensed inspectors from performing inspections in the future. He also seeks damages for alleged constitutional violations, as well as for his state-law breach of contract, conversion, tortious interference with contract, and intentional infliction of emotional

distress claims. Finally, he seeks a declaratory judgment that Defendants violated his First Amendment rights by retaliating against him for speaking out about matters of public concern.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).[1]

## III. ANALYSIS

### A. Section 1985 Claims (Counts I & II)

Counts I and II of the complaint state that they are brought pursuant to both 42 U.S.C. §§ 1983 and 1985. Schlessinger has not alleged the required elements of a § 1985(3) claim: (1) a

---

[1] Defendants also move to strike portions of the complaint pursuant to Rule 12(f), under which a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Such motions are generally discouraged, *see Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012), but may be appropriate to expedite litigation, *see Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (citation and internal quotation omitted). Because the court dismisses the complaint pursuant to Rule 12(b)(6), it does not analyze whether allegations should be stricken.

8

conspiracy; (2) a purpose to deprive the plaintiff of the equal protection of the laws or equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury. *Triad Assocs. v. Chi. Hous. Auth.*, 892 F.2d 583, 591 (7th Cir. 1989). The plaintiff must also allege "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." *Hegwood v. City of Berwyn*, No. 09 C 7344, 2011 WL 3882558, at *23, (N.D. Ill. Sept. 2, 2011). Schlessinger has alleged no racial or class-based discriminatory animus. Counts I and II are therefore dismissed insofar as they allege claims pursuant to § 1985.

**B. Section 1983 Claims (Counts I & II)**

Schlessinger alleges several claims pursuant to § 1983, which provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Citing the First, Fifth, and Fourteenth Amendments, Schlessinger contends that Defendants have violated his constitutional rights.[2]

    1. Fifth Amendment Claims

Although Schlessinger cites both the Fifth and Fourteenth Amendments in his complaint, the Fifth Amendment's due process clause applies to the actions of federal actors, and none of the individual defendants are federal employees. The court therefore construes Schlessinger's due process claims as arising under the Fourteenth Amendment.

In his response, Schlessinger argues that he is alleging a violation not of the Fifth Amendment's due process clause, but of the takings clause, related to Defendants' withholding

---

[2] Counts I and II also refer to Defendants' failure to comply with federal regulations, but the complaint does not make clear whether Schlessinger is bringing a § 1983 claim based on Defendants' violation of federal regulations and, if so, how that violation deprived him of rights protected by § 1983. Thus, insofar as this may be the basis of Schlessinger's § 1983 claim, it is dismissed because Schlessinger has not provided "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

or abatement of his rent subsidies based on failed inspections. The takings clause of the Fifth Amendment is not specifically mentioned in the complaint, and Schlessinger appears to be attempting to amend his complaint in his response. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (enforcing "axiomatic rule that a plaintiff may not amend its complaint in his response brief"). But even if Schlessinger's general reference to the Fifth Amendment in the complaint is construed as a takings clause claim, Schlessinger fails to state such a claim. To succeed on a Fifth Amendment takings claim, a plaintiff must show that he "has availed [him]self of state court remedies." *Covington Court, Ltd. v. Vill. of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996). Schlessinger has not alleged that he sought relief in state court or received any final decision on his claim from the relevant government entity. *See Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 454 (7th Cir. 2002). Count I is dismissed as unripe insofar as it alleges a claim pursuant to § 1983.[3]

2. Due Process Claims

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The complaint does not specify whether Schlessinger is claiming violations of his procedural or substantive due process rights. In his response, however, he argues that the complaint alleges both types of claims. The court will address them in turn.

"An essential component of a procedural due process claim is a protected property or liberty interest." *Minch v. City of Chi.*, 486 F.3d 294, 302 (7th Cir. 2007). To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is "(1)

---

[3] As the claim is unripe, the court does not decide whether the facts alleged suffice to show that Schlessinger's property was "taken." He argues in his response that the CHA deprived him of property by "imprisoning" him in the HAP program, but the complaint contains no specific allegations as to the takings claim.

a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004) (citation omitted). Thus, a plaintiff asserting a procedural due process claim must allege that he has a protected property interest which has been denied without due process. *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007).

Schlessinger may have a protected property interest in his existing HAP contracts. *See Khan v. Bland*, 630 F.3d 519, 529 (7th Cir. 2010). Taking Schlessinger's allegations as true for purposes of a motion to dismiss, his HAP contracts were terminated and his subsidies abated improperly, in violation of the contracts. Thus, he has alleged that he was deprived of a property interest. The question, however, is whether he was denied due process. The Seventh Circuit held in *Khan v. Bland* that a landlord may assert his rights under a HAP contract that was improperly terminated through a state-law breach of contract action. *Id*. at 532 ("Khan has not been deprived a present entitlement, but rather, monies owed under his HAP contracts and lease agreements. His rights under the HAP contracts can be fully protected by bringing a breach of contract action."). It follows that a claim involving the breach of a HAP contract cannot support a federal due process action. *See id.* at 533 ("Khan is seeking to enforce the HAP contract substantively . . . and such action cannot be maintained in federal court under the due process clause."). Schlessinger claims that Defendants violated his due process rights by failing to provide proper notice before allowing tenants to vacate his properties, citing him for unnecessary repairs, abating his subsidy payments, and terminating his HAP contracts. In essence, these are all claims that Defendants violated his HAP contracts. Schlessinger has not alleged that he availed himself of state post-deprivation remedies or that they were inadequate to protect his

11

rights. Therefore, he has not alleged that he was denied procedural due process. His procedural due process claims are dismissed.

In his response, Schlessinger argues that he also alleges a Fourteenth Amendment substantive due process claim because he was deprived of his property rights by the Defendants' arbitrary conduct. As the Seventh Circuit has explained,

> "There are only a handful of fundamental rights for which the due process clause has a substantive component," *Taake v. Cnty. of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008) . . . , and courts must be reluctant to expand substantive due process rights "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights, Tex.*, [503 U.S. 115, 125] (1992). Fundamental rights are rights "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, [521 U.S. 702, 720–21 (1997)].

*Khan*, 630 F.3d at 535. The Seventh Circuit has held that the violation of a HAP contract does not constitute a violation of substantive due process. *Id.* at 535-36. That court explained that neither a breach of contract by the government nor the denial of a government subsidy impinges on a fundamental right protected by substantive due process. Given this binding authority, the court dismisses Schlessinger's substantive due process claim.

3. First Amendment Claims

Schlessinger asserts a First Amendment retaliation claim, alleging that Defendants retaliated against him for complaints made against the CHA and CVR. To state a valid First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) a causal connection between the two." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (citation and internal quotations omitted). Defendants argue that Schlessinger has not alleged facts to support the first element, because his complaints to the

CHA and to HUD were not protected by the First Amendment. They further argue that he has not shown that any protected speech in which he might have engaged was causally connected to retaliatory acts by Defendants.

To determine if speech is protected, courts generally apply the test announced by the Supreme Court in *Connick v. Myers*, 461 U.S. 138 (1983), which requires that the asserted speech touch upon a matter of public concern. Whether speech addresses a matter of public concern is determined by the content, form and context of a given statement. *See id.* at 147-48; *see also Landstrom v. Ill. Dept. of Children and Family Servs.*, 892 F.2d 670, 679 (7th Cir. 1990) (dismissing case by parents who complained privately and directly to school district employees about district's examinations of their children because complaints were "purely personal"). Thus, if the speech involved purely private matters, was designed to further Schlessinger's private interests, was not widely disseminated, and would not matter to the public's evaluation of the CHA's performance, it would not involve a matter of public concern.

The court has parsed the complaint in an effort to determine the content of Schlessinger's speech. He alleges that in 2008, he "began criticizing and opposing the system of inspections by CHA of HCV units" and "repeatedly and continuously opposed the accuracy and competency of the inspectors and the inspections conducted by CHA to the HCV units which resulted in government waste and abuse." (Compl. 4, ECF No. 1.) Between January and April 2009, he "complained, on several occasions, to several officers and agents of the CHA regarding government waste and abuse pertaining to the long term and ongoing process of the incompetence of the inspectors and the enormous amount of additional unwarranted expenses incurred by [him] due to this incompetence." (Compl. ¶ 49.) Between January and May 2009, he also "showed up at several of the CHA's Public Board of Director's meetings, to issue his

complaints and concerns publicly against CHA." (Compl. ¶ 50.) Also in May 2009, he contacted the HUD Director "to complain about the CHA and their inspectors" (Compl. ¶ 51.), "sent a letter to several officers and agents of the CHA complaining that the CHA was violating the terms and conditions of the Annual Contributions Contract between CHA and HUD" (Compl. ¶ 52.), and "attended the CHA's [P]ublic Board of Directors meeting and presented the board with . . . a booklet" containing copies of his complaints to the CHA and HUD as well as materials pertaining to his own properties and contracts. (Compl. ¶ 54.) Schlessinger states in the complaint that these actions resulted in the resolution of his complaints until January 2011, when CVR took over operations of the HCV program.

Although some of this speech—such voicing the opinion at public meetings that the CHA was committing public waste and violating HUD regulations—could constitute protected speech, Schlessinger has not alleged that complaints made in 2008 and 2009 are causally connected to retaliatory acts by Defendants. The actions alleged in the complaint that might be construed as retaliatory occurred approximately two years after these complaints were made. That large time gap defeats any inference that Defendants acted in retaliation for Schlessinger's 2008 and 2009 complaints. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) ("Based on our case law, . . . extended time gaps alone militate against allowing an inference of causation based on suspicious timing.").

Schlessinger alleges that he made additional complaints about the CHA and CVR's conduct in 2011 and 2012. Between March and June 2011, he appeared "at the CHA's Public Board of Director's meeting, to issue his complaints and concerns publicly against CHA," and between January and August 2011, he "continued to complain to several officers, managers, supervisors, and agents of the CHA regarding the continuing problems and lack of competence

14

on the part of the CHA," and filed further complaints with the HUD Director. (Compl. ¶¶ 60, 94, 95.) The complaint does not explain what matters were involved in these complaints. Schlessinger then alleges that he communicated with CHA and CVR officials about his own HAP contracts and tenants, subsidy abatements, inspections, and the CHA's issuance of moving papers to his tenants. On September 29, 2011, he filed a complaint against the CHA and CVR in the Circuit Court of Cook County.

The only content of Schlessinger's speech during this period that is specifically articulated in the complaint involves Schlessinger's concerns about his own tenants and contracts. These are not issues of public concern, do not appear to have been disseminated to the public, and address only Schlessinger's private interests. Thus, they cannot support a First Amendment retaliation claim. The court therefore dismisses counts I and II as to Schlessinger's First Amendment claims. The dismissal is without prejudice, and Schlessinger is given leave to amend his complaint to the extent that he can allege that Defendants retaliated against him for engaging in protected speech.

## C. Claims against the Individual Defendants

Although counts I and II are dismissed because Schlessinger has failed to state a violation of his First, Fifth, or Fourteenth Amendment rights, given that Schlessinger is given leave to amend his complaint, the court notes additional deficiencies in the complaint with regard to the individual Defendants. The complaint states that Schlessinger is suing the individual Defendants in their individual and official capacities. But the claims against the individual Defendants in their official capacities must be dismissed because Schlessinger is bringing a claim against the CHA and CVR. "Actions against individual defendants in their official capacities are treated as

suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

As to the claims against the individual Defendants in their individual capacities, although there are references to the various individuals in the thirty-page section of the complaint titled "factual allegations," the court finds no reference to any individual defendant in count I. In order for an individual to be liable under § 1983, "a plaintiff must show the actor was 'personally responsible for the constitutional deprivation.'" *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) (quoting *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002)). It is not clear from the complaint what any individual Defendant did to deprive Schlessinger of his constitutional rights. At most, the court can infer that some of the Defendants failed to comply with their duties under CHA and HUD regulations. The complaint also alleges that the individual Defendants "conspired" to deprive Schlessinger of his constitutional rights. But the allegations regarding the purpose of the conspiracy and the acts committed in furtherance are completely conclusory: Defendants committed "wrongful acts" to deprive Schlessinger of "property and liberty without due process of law," and "certain overt acts" were committed "[i]n furtherance of the conspiracy." (Compl. 5-6.) These allegations are insufficient to state a claim under Rule 8(a), because they do not give the individual Defendants notice of what the claims against them are.

**D. State Law Claims**

Once primary federal claims have been dismissed, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc*., 672 F.3d 476, 480 (7th Cir. 2012). As Schlessinger's federal claims are dismissed, the court dismisses his state law claims without prejudice.

## IV. Conclusion

Schlessinger has not alleged facts showing that Defendants deprived him of a constitutional right. As a result, the court dismisses counts I and II of the complaint. The complaint is dismissed without prejudice as to Schlessinger's First Amendment claims. As counts III-VI are supplemental state-law claims, they are also dismissed without prejudice. Should Schlessinger wish to replead his First Amendment claims in an amended complaint, he must do so by December 12, 2012.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 13, 2012